FRANK M. PITRE (SBN 100077)
fpitre@cpmlegal.com
ALISON E. CORDOVA (SBN 284942)
acordova@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:     (650) 697-6000
Facsimile:      (650) 697-0577

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TERESA LOPEZ**, individually and as heir to **ANTONIO RAMOS**, deceased; **RED RYDER RAMOS**, individually and as heir to **ANTONIO RAMOS**, deceased; and **TERESA LOPEZ** and **RED RYDER RAMOS**, as co-representatives of the **ESTATE OF ANTONIO RAMOS**,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>**THE UNITED STATES OF AMERICA**, a governmental entity,<br><br>　　　　　　Defendant. | **Case No.:**<br><br>**COMPLAINT FOR:**<br><br>1.　**WRONGFUL DEATH – NEGLIGENCE**<br><br>2.　**SURVIVAL ACTION**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................................... 1

II. JURISDICTION AND VENUE .................................................................................... 2

III. THE PARTIES ............................................................................................................... 3

    A.  Plaintiffs ............................................................................................................. 3

    B.  Defendant ........................................................................................................... 3

IV. STATEMENT OF RELEVANT FACTS ..................................................................... 3

    A.  The Failure of ICE to Secure Weapons Is Well-Documented ................................. 3

    B.  The Theft of the Gun Was a Foreseeable Consequence of Leaving it Unsecured, In Plain View, In a Vehicle Parked on the Street in a High Auto Theft Neighborhood ...................................................................................................... 4

    C.  Tony Was Killed While Volunteering his Artistic Talent to Paint a   Nonviolence Mural ............................................................................................... 6

V.  CAUSES OF ACTION .................................................................................................. 8

    **FIRST CAUSE OF ACTION** .............................................................................. 8
    **WRONGFUL DEATH - NEGLIGENCE**
    **(By Plaintiffs Teresa and Red,**
    **Individually and As Heirs of Antonio Ramos)**

    **SECOND CAUSE OF ACTION** ......................................................................... 10
    **SURVIVAL CAUSE OF ACTION**
    **(By Plaintiffs Teresa and Red, as Co-Representatives**
    **of The Estate of Antonio Ramos)**

VI. PRAYER FOR RELIEF ............................................................................................. 10

VII. JURY DEMAND ......................................................................................................... 11

Plaintiffs Teresa M. Lopez ("**TERESA**") and Red Ryder Ramos ("**RED**"), individually and as heirs to Antonio Ramos ("**TONY**"), deceased, (hereinafter collectively "**PLAINTIFFS**"), bring this action against Defendant, the United States of America, for the wrongful acts of U.S. Immigration and Customs Enforcement ("**ICE**").

I. **INTRODUCTION**

1. On or about September 13, 2015, an unsecured GLOCK 26 9mm caliber gun was left in an unlocked bag, in plain view, in an unattended rental vehicle that was parked on the street in an area of downtown San Francisco that is well-known for auto-thefts and smash-and-grabs. The gun was a government-issued duty weapon of an **ICE** officer.[1]

2. On or about September 29, 2015, at approximately 10:30 a.m., that same gun was used by a well-known gang member and convicted felon, Marquise R. Holloway,[2] to shoot and kill **TONY** in broad daylight while he was volunteer painting a community, antiviolence mural on the 580 freeway underpass in the 3500 block of West Street in Oakland, California.



**TONY** painting the West Street Mural prior to his death.

---

[1] V. Cestone, "ICE: Weapon stolen from car in San Francisco belonged to officer," KRON 4 News (Nov. 24, 2015) http://kron4.com/2015/11/24/ice-weapon-stolen-from-car-in-san-francisco-belonged-to-officer/ (accessed July 14, 2017).

[2] Marquise R. Holloway is associated with the notorious Ghost Town gang, which claims the area where Tony was painting the mural as part of its territory. M. Fraley and H. Harris, "Suspect in Oakland muralist slaying explodes during intense arraignment, Bay Area News Group (Nov. 24, 2015), http://www.mercurynews.com/2015/11/24/suspect-in-oakland-muralist-slaying-explodes-during-intense-arraignment/ (accessed July 13, 2017).

COMPLAINT                                                                                                          1



**TONY**—with two community kids—in front of the West Street Mural prior to his death.

## II.     JURISDICTION AND VENUE

3.     **ICE** was served with an administrative claim pursuant to the FTCA on or around August 3, 2016. **PLAINTIFFS** received a response from **ICE** by letter dated February 3, 2017, denying the claim.

4.     This Court has original jurisdiction over the causes of action against the federal government pursuant to 28 U.S.C. § 1346(b)(1). This Court has supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367(a) because the claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy, and arise from a common nucleus of operative facts are so intertwined they cannot reasonably be separated.

5.     Venue is proper pursuant to 28 U.S.C. § 1402(b) because **PLAINTIFFS** reside in this judicial district and the wrongful acts and/or omissions complained of occurred in this judicial district.

III. **THE PARTIES**

    A. **Plaintiffs**

    6. Decedent Antonio Ramos ("**TONY**"), now deceased, was a resident of Emeryville, California. **TONY** was born on September 9, 1988, and was twenty-seven years old at the time of his death. **TONY** was a Bay Area native, an altruistic and high-spirited young man with a passion and gift for all forms of art, especially painting and music. He deeply loved his family and had a longstanding reputation for being committed to helping and caring for others. **TONY** is the son of Teresa Lopez and Red Ramos.

    7. Plaintiff Teresa Lopez ("**TERESA**") is, and at all relevant times was, a resident of Emeryville, California. Teresa is the mother of **TONY** and a proper personal representative and heir pursuant to Code of Civil Procedure section 337.60(a).

    8. Plaintiff Red Ryder Ramos ("**RED**") is, and at all relevant times was, a resident of Emeryville, California. Red is the father of **TONY** and a proper personal representative and heir pursuant to Code of Civil Procedure section 337.60(a).

    B. **Defendant**

    9. The United States of America ("**USA**") is the federal government, who is the proper defendant pursuant to 28 U.S.C. § 2679(b)(1) for claims for money damages arising from or out of a negligent or wrongful act and/or omission of any federal employee committed within the course and scope of their employment. The United States Department of Homeland Security is a cabinet department of the **USA** with Immigration and Customs Enforcement ("**ICE**") acting as its law enforcement agency. **ICE**, through its officers, officials, agents and/or employees, is responsible for enforcing the nation's immigration laws and ensuring the departure of undocumented immigrants from the United States.

IV. **STATEMENT OF RELEVANT FACTS**

    A. **The Failure of ICE to Secure Weapons Is Well-Documented**

    10. A January 2010 report by the Office of the Inspector General identified an alarming number of "missing" weapons from agencies within the Department of Homeland

1  Security, which includes **ICE**. Department of Homeland Security agencies reportedly lost 289
2  firearms in Fiscal Years 2006 throughout 2008—i.e. this amounts to a firearm being lost <u>*every*</u>
3  <u>*four days*</u>. ICE and the Customs and Border Protection accounted for 243 of the lost firearms—or
4  close to 85% percent of the total number. The Office of the Inspector General determined that 179
5  of the 243 firearms (74%) went missing due to an agent or officer's failure to properly secure the
6  weapon and that "all 179 losses may have been prevented had the officers properly safeguarded
7  their firearms."

8      11.    In response to its finding that **ICE** did not adequately safeguard and control its
9  weapons in 2010, the Office of the Inspector General pointed out that **ICE** policies and
10 procedures require agents and officers to secure a firearm with an **ICE**-approved safety-locking
11 device when left in a vehicle. Despite this measure, the Office of the Inspector General
12 recommended that **ICE** take further measures to align itself with <u>*best practices*</u>: "While using a
13 safety-locking device is good practice, the best way to protect firearms from theft is to store them
14 in lockboxes properly mounted as recommended in the manufacturers' guidelines."

15     **B.**    <u>**The Theft of the Gun Was a Foreseeable Consequence of Leaving it Unsecured, In Plain View, In a Vehicle Parked on the Street in a High Auto Theft Neighborhood**</u>

18     12.    San Francisco (and California, generally) has a well-documented and publicized
19 auto-theft problem, including the theft of firearms from vehicles. In 2014, the National Insurance
20 Crime Bureau determined that California claimed nine (9) out of ten (10) of the nation's highest
21 auto theft locations. Overall, San Francisco was ranked number four (4) in the nation, and had a
22 rate of 649 stolen vehicles for every 100,000 residents.[3]

23     13.    In August 2015—approximately one month prior to the gun being stolen—it was
24 highly publicized that San Francisco was experiencing a severe jump in car break-ins: "An
25 alarming 47 percent spike in San Francisco car break-ins in the first half of this year has prompted

---

[3]    Alexander, Kurtis, "California drives off as nation's auto theft capital," SFGate.com (June 27, 2014) available at: http://blog.sfgate.com/stew/2014/06/27/california-drives-off-as-nations-auto-theft-capital/ (last accessed 7/25/2017).

COMPLAINT    4

a blame game between police, prosecutors and politicians. . .” According to San Francisco Supervisor Scott Wiener, "we've seen an absolute explosion of auto break-ins." Between January and June of 2015, San Francisco reported 11,917 vehicle burglaries in the city. This represented a 47% increase from 2014, a 62% increase from 2013, and a 171% increase from 2010.[4]

14. In early September 2015, the SF Chronicle reported: "San Francisco tourists plagued by auto burglaries." According to that article, "car break-ins are epidemic in San Francisco," and "smash-and-grabbers are <u>clearly going after rental cars</u>." Accordingly, at least one San Francisco Supervisor was asking rental car companies to make consumers aware that "break-ins are common and that they should not leave belongings in full view in the car." There were also signs posted in high auto break-in areas, warning people to "Park Smart!" and "Take <u>ALL</u> your belongings with you."[5]



Source: San Francisco Chronicle[6]

15. As of November 2015, San Francisco Police Department records reflected the theft of fifty-seven (57) guns from vehicles in 2015. This was up from forty-eight (48) guns in 2014, and thirty-one (31) in 2013.[7]

---

[4] Sernoffsky, Evan, "Jump in S.F. car break-ins prompts frustration, finger-pointing," SFChronicle.com (Aug. 15, 2015) available at: http://www.sfchronicle.com/news/article/Jump-in-S-F-car-break-ins-prompts-frustration-6446750.php?t=a2da5e08910a4808f6&cmpid=premartcl (last accessed 7/25/2017).
[5] Nevius, C.W., "San Francisco tourists plagued by auto burglaries," SFChronicle.com (Sept. 9, 2015) available at: http://www.sfchronicle.com/bayarea/nevius/article/San-Francisco-tourists-plagued-by-auto-burglaries-6494486.php?cmpid=premartcl (last accessed 7/25/2017).
[6] *Id.*

16.     In the months leading up to **TONY**'s death, there was also the highly publicized killing of Kathryn Steinle on the San Francisco Embarcadero that was perpetrated with a government firearm stolen from a vehicle in the SOMA area of San Francisco. **ICE** was on notice of this killing as the shooter was an undocumented immigrant who had escaped **ICE**'s custody after an **ICE** detainer request was ignored by the City and County of San Francisco.[8]

17.     The number of auto break-ins was particularly high in San Francisco's Southern Police District, i.e. the SOMA neighborhood where the firearm used to kill **TONY** was allegedly stolen. During the six months preceding **TONY**'s death, the Southern Police District had 5,508 reported auto break-ins.[9]

C.     <u>Tony Was Killed While Volunteering his Artistic Talent to Paint a Nonviolence Mural</u>

18.     On or around September 13, 2015, between 7:30 p.m. and 9:15 p.m., a GLOCK 26 9mm handgun issued to an **ICE** Enforcement and Removal Operations officer was stolen. The weapon was taken from an unattended vehicle parked on the street near South Park Street and Second Street, which is in the SOMA neighborhood of San Francisco, California. It was left

---

[7] Knight, Heather, "S.F. gun thefts from vehicles spike alongside car break-ins," SFChronicle.com (published Dec. 1, 2015) available at: http://www.sfchronicle.com/bayarea/article/S-F-gun-thefts-from-vehicles-spike-alongside-car-6666110.php (last accessed on July 25, 2017).

[8] V. Cestone, "Pier 14 Shooting: San Francisco Police confirm weapon recovered in Bay near Pier 14 is same used in homicide," KRON 4 News (July 10, 2015), http://kron4.com/2015/07/10/san-francisco-police-confirm-weapon-from-pier-14-is-same-used-in-homicide (accessed July 13, 2017); *see also* M. Matthews and L. Fernandez, "Gun used in Pier 14 shooting belonged to federal agent: Sources," MSNBC (July 8, 2015) http://www.msnbc.com/msnbc/gun-used-pier-14-shooting-belonged-federal-agent-sources (accessed July 13, 2017); D. Simon, S. Sidner, and E. Payne, "Gun in San Francisco killing stolen from federal agent's vehicle, source says," CNN (July 8, 2015), http://www.cnn.com/2015/07/08/us/san-francisco-killing/index.html (accessed July 13, 2017).

[9] SFOpenData, https://data.sfgov.org/Public-Safety/SFPD-Incidents-from-1-January-2003/trnnf-yvry (accessed April 5, 2016).

COMPLAINT                                                                                                   6

in a bag by one or more **ICE** officers, along with two badges, a pair of handcuffs, three fully loaded ammunition magazines, and a baton.[10]

19. Later that same night, a parking lot attendant in the 500 block of Howard Street discovered several of the stolen items. However, the gun and handcuffs were not recovered and remained missing.

20. On the morning of Tuesday, September 29, 2015, **TONY** was volunteering his artistic talents to help paint a 4,000 square foot community antiviolence mural in Oakland, California. The artwork was beautifying a concrete freeway underpass in the 3500 block of West Street.



Image of the West Street Mural. Source: S.F. Gate[11]

---

[10] J. Van Derbeken and K. Williams, "Gun used to kill Oakland muralist traced to ICE agents' car," S.F. Gate (Nov. 26, 2015) http://www.sfgate.com/crime/article/Gun-used-to-kill-Oakland-muralist-traced-to-ICE-6657172.php (accessed July 14, 2017).

[11] J. Lyons and K. Williams, "Artist shot dead while working on West Oakland mural, S.F. Gate (Sept. 30, 2015) http://www.sfgate.com/crime/article/Artist-shot-dead-while-working-on-West-Oakland-6538258.php#photo-8713288 (accessed July 13, 2017).

21. Shortly before 10:30 a.m., **TONY** took a break from painting so he could photograph the work in progress. Marquise Holloway suddenly opened fire on **TONY,** shooting him multiple times using the stolen GLOCK 26 9mm handgun.[12] A witness to the incident said, "Antonio never raised his voice… There was no altercation, there was nothing like that."[13]

22. Police and medical teams quickly responded to reports of gunfire in the area. First responders found **TONY** critically wounded and transported him to a nearby hospital, where he was pronounced dead soon after.

23. The gun Marquise Holloway used to kill **TONY** was the **ICE** officer's stolen weapon. "We put the firearm in the system. When Oakland ran the firearm, it came back to our auto burglary," San Francisco Police Chief Greg Suhr stated.[14] The Oakland Police Department also confirmed that, "The firearm used in the murder of Antonio Ramos on September 29, 2015 was reported as property taken in a burglary… The stolen firearm is associated with the Federal Agency, Department of Homeland Security (ICE)."[15]

## V.   CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**WRONGFUL DEATH - NEGLIGENCE**
(By Plaintiffs Teresa and Red,
Individually and As Heirs of Antonio Ramos)

24. **PLAINTIFFS** hereby re-allege and incorporate by reference each and every allegation above as if fully set forth in detail herein.

---

[12] L. Anthony, "Witness describes moments before artist murdered in West Oakland," ABC7 News ((Sept. 30, 2015) http://abc7news.com/news/witness-describes-moments-before-oakland-artists-murder/1010587/ (accessed July 13, 2017).

[13] *Id.*

[14] J. Van Derbeken and K. Williams, "Gun used to kill Oakland muralist traced to ICE agents' car," S.F. Gate (Nov. 26, 2015) http://www.sfgate.com/crime/article/Gun-used-to-kill-Oakland-muralist-traced-to-ICE-6657172.php (accessed July 14, 2017).

[15] R. Bowe, "Gun Used in Oakland Muralist Killing Belonged to Federal Agent," KQED News (Nov. 25, 2015) https://ww2.kqed.org/news/2015/11/25/gun-used-in-oakland-muralist-killing-belonged-to-federal-agent/ (accessed July 14, 2017).

25.     **PLAINTIFFS** allege that one or more **ICE** officer(s) acted negligently, carelessly, recklessly, and/or unlawfully by, including but not limited to: (1) failing to properly secure the subject firearm and/or ammunition; (2) failing to properly store the subject firearm and/or ammunition; (3) leaving the subject firearm and/or ammunition in an unlocked bag in plain view (not in the trunk) in a rental car parked on the street in a well-known high auto-theft and break-in neighborhood; (4) leaving the subject firearm and/or ammunition in close enough proximity to the window of a vehicle that a passerby could smash the window and obtain the firearm and/or ammunition; (5) leaving the subject firearm loaded with ammunition while not in use and/or in an unattended vehicle; (6) failing to carry the subject firearm on his/her person at all times; and/or (7) using a rental vehicle to transport the subject firearm and/or ammunition.

26.     It was foreseeable that leaving a bag in plain sight in a rental vehicle parked on the street in a high auto theft and break-in neighborhood would result in the vehicle and/or bag's theft, and thereby result in the theft of a firearm and ammunition, in this case specifically. It was also reasonably foreseeable that a firearm and ammunition once stolen, would then be used in the near future to pursue a criminal course of conduct.

27.     As a direct and legal result of the wrongful acts and/or omissions of the **ICE** officer, Marquise Holloway—a known gang member and felon with a prior conviction in 2012 for second-degree robbery, rendering Holloway unable to legally obtain a firearm in the state of California—was allowed access to a loaded weapon that he used to kill **TONY**.

28.     By reason of the wrongful death of **TONY**, resulting from the wrongful acts of Defendant **USA**, Plaintiffs suffered and continue to suffer significant and traumatic loss due to being deprived of the love, society, solace, companionship, comfort, care, assistance, protection, affection, moral support, and training and guidance of their father in an amount to be determined at the time of trial.

29.     By reason of the wrongful death of **TONY**, resulting from the wrongful acts of Defendant **USA**, Plaintiffs suffered and continue to suffer the loss of the financial support and the

**COMPLAINT**                                                                                                                                 9

1  reasonable value of household services that **TONY** provided, and would have provided in the
2  future, in an amount to be determined at the time of trial.
3      30.   By reason of the wrongful death of **TONY**, resulting from the wrongful acts of
4  Defendant **USA**, Plaintiffs have incurred funeral and burial expenses in an amount to be
5  determined at the time of trial.

**SECOND CAUSE OF ACTION**
**SURVIVAL CAUSE OF ACTION**
**(By Plaintiffs Teresa and Red, as Co-Representatives**
**of The Estate of Antonio Ramos)**

    31.   **PLAINTIFFS** hereby re-allege and incorporate by reference each and every allegation above as if fully set forth in detail herein.

    32.   On September 29, 2015 and prior to his death, the foregoing cause of action arose in **TONY**'s favor. Since his death, **TERESA** and **RED** have served as representatives for the Estate of **ANTONIO RAMOS** and are authorized as successors in interest with respect to the property that was damaged, lost, or destroyed in this tragic incident, to pursue any and all legal claims for damages related thereto, and to recover damages for expenses incurred related to medical and/or emergency services related to this incident.

    33.   By reason of the aforesaid premises, on September 29, 2015, and immediately prior to his death, expenses were incurred for emergency response and/or medical services rendered to **TONY** in connection with his multiple gunshot wounds. Said economic losses occurred as a direct and legal result of the wrongful conduct of **DEFENDANT** as set forth hereinabove.

    WHEREFORE Plaintiffs pray for relief as set forth below.

**VI.   PRAYER FOR RELIEF**

    WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

    1.   For compensatory and general damages in an amount according to proof;
    2.   For special damages in an amount according to proof;
    3.   For pre- and post-judgment interest on all damages as allowed by the law;

COMPLAINT                                                                                      10

4. For costs of suit incurred herein;

5. For attorney fees under existing law; and

6. For such other and further relief as the Court may deem just and proper.

Dated: August 2, 2017     **COTCHETT, PITRE & McCARTHY, LLP**

By:  _____/s/ Alison E. Cordova_____
   **ALISON E. CORDOVA**
   *Attorneys for Plaintiffs*

## VII. JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Dated: August 2, 2017     **COTCHETT, PITRE & McCARTHY, LLP**

By:  _____/s/ Alison E. Cordova_____
   **ALISON E. CORDOVA**
   *Attorneys for Plaintiffs*