UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TERESA LOPEZ, et al.,
  Plaintiffs,
  v.
UNITED STATES OF AMERICA,
  Defendant.

Case No. 17-cv-04386-MEJ

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 12

## INTRODUCTION

Pending before the Court is the United States of America's Motion to Dismiss pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6) and to Strike the Demand for a Jury Trial. Mot., Dkt. No. 12. Plaintiffs Teresa Lopez (Teresa), Red Ryder Ramos (Red), and the Estate of Antonio Ramos (Tony) filed an Opposition (Dkt. No. 16) and Defendant filed a Reply (Dkt. No. 18). The parties presented excellent oral arguments to the Court on January 11, 2018. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **DENIES** Defendant's Motion to Dismiss and **GRANTS** the Motion to Strike the demand for jury trial for the following reasons.

## BACKGROUND

As it must when ruling on a motion to dismiss for failure to state a claim, the Court accepts as true the following well-pleaded allegations of the Complaint:

"On or about September 13, 2015, an unsecured GLOCK 26 9mm caliber gun was left in an unlocked bag, in plain view, in an unattended rental vehicle that was parked on the street in an area of downtown San Francisco that is well-known for auto-thefts and smash-and-grabs. The gun was a government-issued duty weapon of [a United States Immigration and Customs Enforcement

(ICE)] officer." Compl. ¶ 1, Dkt. No. 1. The gun was taken from an unattended, parked vehicle; it had been left in a bag by one or more ICE officers together with three fully loaded ammunition magazines. *Id.* ¶ 18. The same gun was used two weeks later by a well-known gang member and convicted felon to shoot and kill Tony as he was volunteering and painting a community antiviolence mural in Oakland. *Id.* ¶¶ 2, 20-23. The Complaint does not allege Tony's killer stole the gun from the parked car. *See* Compl. Teresa and Red are Tony's parents, and personal representatives of his estate. *Id.* ¶¶ 6-8.

The Department of Homeland Security, of which ICE is a part, lost 289 firearms during Fiscal Years 2006-2008 – in other words, one every four days. *Id.* ¶ 10. ICE and the Customs and Border Patrol accounted for 243 of these lost firearms; of those, 179 (74%) went missing due to an agent's or officer's failure to properly secure the weapon. *Id.* "[A]ll 179 losses may have been prevented had the officers properly safeguarded their firearms." *Id.* (internal quotation marks omitted). Although ICE policies and procedures require agents and officers to secure a firearm with an ICE-approved safety-locking device when left in a vehicle, the Office of the Inspector General recommended that ICE take further measures to align itself with best practices, that is, "to store them in lockboxes properly mounted as recommended in the manufacturers' guidelines." *Id.* ¶ 11.

In addition, San Francisco has a well-documented and publicized auto-theft problem, including the theft of guns from vehicles. *Id.* ¶¶ 12-15, 17. "In the months leading up to Tony's death, there was also the highly publicized killing of Kathryn Steinle on the San Francisco Embarcadero that was perpetrated with a government firearm stolen from a vehicle in the SOMA area of San Francisco." *Id.* ¶ 16. In light of this well-known problem, "[i]t was foreseeable that leaving a bag in plain sight in a rental vehicle parked on the street . . . would result in the theft of a firearm and ammunition. . . . It was reasonably foreseeable that a firearm and ammunition once stolen, would then be used in the near future to pursue a criminal course of conduct." *Id.* ¶ 26.

The ICE officer acted negligently, carelessly, recklessly, and/or unlawfully by failing to properly secure and store the firearm and ammunition; leaving these items in an unlocked bag in plain view (rather than in the trunk) in a rental car parked on the street, in close enough proximity

to a window to allow a passerby to smash the window and grab the firearm and ammunition; leaving the firearm loaded in the unattended vehicle; failing to carry the firearm at all times; and/or using a rental vehicle to transport the firearm and ammunition. *Id.* ¶ 25. Defendant's negligence caused Tony's killer access to the loaded weapon he used to kill Tony. *Id.* ¶ 27.

Based on these allegations, Plaintiffs assert a claim for wrongful death (negligence) and a survival cause of action. *Id.* ¶¶ 24-30, 31-33. They contend Defendant has waived its sovereign immunity pursuant to the Federal Tort Claim Act (FTCA).

## LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

United States District Court
Northern District of California

1   If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

2   request to amend the pleading was made, unless it determines that the pleading could not possibly

3   be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

4   banc) (internal quotations and citations omitted). However, the Court may deny leave to amend

5   for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the

6   movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

7   to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."

8   *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v.

9   Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

**A.  Negligence**

The FTCA provides a limited waiver of the Government's sovereign immunity for damages for personal injury caused by the negligent or wrongful act or omission of any employee of a federal agency while acting within the scope of her office or employment, under circumstances where the Government, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 2672. To state a claim under the FTCA, Plaintiffs must allege a violation of the "law of the place where the act or omission occurred." *FDIC v. Meyer*, 510 U.S. 471, 478-79 (1994). In this case, the acts and omissions occurred in California. *See* Compl. ¶¶ 1-2. Under California law, to state a negligence claim, Plaintiffs must allege facts sufficient to show Defendant owed a legal duty to use due care, Defendant breached that duty, and the breach was the proximate cause of the resulting injury. *Beacon Residential Cmty.. Ass'n v. Skidmore, Owings & Merrill LLP*, 59 Cal. 4th 568, 573 (2014). The United States moves to dismiss this claim because (1) California law imposes no duty on an individual gun owner to secure the firearm against theft by a stranger to prevent another stranger from using the firearm to cause injury at some later time and place, and (2) Plaintiffs have not alleged facts sufficient to show causation. *See* Mot. at 6-16.

1.  Duty

"Whether a legal duty arises is a question of law which is simply an expression of the sum

4

total of the policy considerations that lead a court to conclude a particular plaintiff is entitled to protection. [] A critical part . . . is whether [a plaintiff] is foreseeably endangered by defendant's conduct. . . . Although whether a duty exists is a question of law, foreseeability often is a question" of fact. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1204 (9th Cir. 2003) (internal quotation marks and citations to California authorities omitted).

Defendant acknowledges that California law, in general, imposes a duty of care upon gun owners. *See* Mot. at 8. But Defendant disputes that California law imposes a duty of care by gun owners to the general public against firearm theft by a stranger to prevent another stranger from using that firearm to cause injury at some later time. *Id.* (citing *Steinle v. City & Cty. of San Francisco*, 230 F. Supp. 3d 994, 1031 (N.D. Cal. 2017) ("Whether a gun owner owes a duty to the public to secure his or her firearm against theft by a stranger, however, appears to be an issue of first impression under California law"))).

### a. *The Special Circumstances Doctrine*

In *Steinle*, Judge Spero analogized the duty potentially owed by gun owners in these situations to the special circumstances doctrine that creates an exception to the general rule that vehicle owners are not liable for harm caused by thieves. 230 F. Supp. 3d at 1032-33. This exception, which "is essentially nothing more than a test of foreseeability of harm" (*id.* at 1032 (internal quotation marks and citation omitted)), generally applies to "particularly dangerous" vehicles left with the keys in the ignition or otherwise ready to operate. *See Avis Rent A Car Sys., Inc. v. Superior Court*, 12 Cal. App. 4th 221, 228 (1993) ("The Supreme Court cases show that 'special circumstances' exist when heavy vehicles are left unattended and available for use by those not accustomed to driving them."). Handguns, like bulldozers or two-ton trucks left parked overnight in high-crime neighborhoods, are particularly dangerous:

> A handgun is indisputably capable of inflicting serious injury and damage—as a deadly weapon, that is its very purpose. . . . Leaving a gun loaded makes that capability for harm readily accessible in the same way as leaving the key in the ignition of a vehicle. Plaintiffs allege that the handgun was left loaded and unlocked in a vehicle in downtown San Francisco, parts of which are well known to have high rates of car break-ins and similar petty theft. Even assuming for the sake of the argument that the car was locked and the gun itself was not visible, the Court holds that, at the pleading stage, the

5

> complaint includes sufficient allegations to support a claim that leaving a loaded gun in a backpack visible on the seat of an unattended vehicle in San Francisco "create[s] foreseeable risk of harm" comparable to that posed by a dangerous vehicle, and that the [Bureau of Land Management (BLM)] ranger therefore had a duty to better secure his handgun against theft. Whether the ranger in fact had such a duty, and if so, the precise nature of that duty, depends on circumstances better addressed on a more complete factual record at summary judgment or at trial.

*Steinle*, 230 F. Supp. 3d at 1033 (internal citations omitted). The undersigned finds Judge Spero's reasoning compelling and follows it here.

Defendant distinguish *Steinle* and the special circumstances cases analyzed therein because in this instance, the gun was not used by the gun thief near the scene of the theft, but by another individual two weeks later across the Bay in Oakland. *See* Mot. at 9-14 (applying foreseeability factors articulated in *Rowland v. Christian*, 69 Cal. 2d 108, 113 (1968), and relying on *Avis*, 12 Cal. App. 4th at 233).[1] The Complaint does not allege the gun was stolen by any individual other than the man who killed Tony.

In *Avis*, the California Court of Appeals analyzed whether a car rental company owed a duty of care to a third party who had been injured by a car stolen from the rental company. 12 Cal. App. 4th at 222-23. The plaintiff alleged Avis left keys in the ignitions of its rental cars for up to 45 minutes during the check-in process for its vehicles, did not employ adequate security measures, and had been aware of security issues as other cars had been stolen from the parking lot. *Id.* at 223. The plaintiff further alleged that an Avis rental car was used as the getaway vehicle in a burglary seven days after being stolen from the Avis parking lot, and rammed the plaintiff's vehicle after engaging in a high-speed chase with the police. *Id.* The Court of Appeals analyzed a

---

[1] "Although it is true that some exceptions have been made to the general principle that a person is liable for injuries caused by his failure to exercise reasonable care in the circumstances, it is clear that in the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy. . . . A departure from this fundamental principle involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Rowland*, 69 Cal. 2d at 112-113.

"series of key-in-the-ignition cases, [in which] the California Supreme Court . . . announced principles identified as the 'special circumstances' doctrine." *Id.* at 224-28. First, the Court of Appeals concluded the "special circumstances" doctrine did not apply to the rental vehicle that was involved in the accident that injured the plaintiff: "The Supreme Court cases show that 'special circumstances' exist when heavy vehicles are left unattended and available for use by those not accustomed to driving them. The incident here involved an ordinary car, not heavy equipment." *Id.* at 228. Second, it criticized those cases that had extended the special circumstances doctrine "too far" and had focused on foreseeability to the detriment of another factor in the duty analysis—policy:

> [H]owever foreseeable car theft and an accident by the thief may be, leaving an ordinary automobile unattended on the street with a key in the ignition does not create a duty to protect other motorists from the negligent driving of a thief.
>
> We conclude that Avis's conduct of parking its cars in a negligently attended lot with keys in the ignitions did not create a duty to control the conduct of a thief. It is true that the risk of theft increases when more cars are involved and when they are in a fixed location. Thieves may learn about the target cars and may find ways to defeat the security provided. But this increase in the risk of theft due to negligence of an owner of a fleet of cars is much like the increased risk associated with leaving keys in the ignition of a car left unattended on the street. It is not equivalent to inviting or enticing an incompetent driver to tamper with a vehicle. These actions are not the "special circumstances" which create a special relationship between or among the parties. Thus, they do not impose on the car owner the duty to control the actions of the thief.
>
> Even if we were somehow to find the circumstances "special," we would not extend the duty to this accident. The duty, if it existed, would not be perpetual and unlimited in scope. We conclude, as a matter of law, that it would not extend to this accident: (1) in another county (2) one week later (3) during a police chase not caused by a report of the vehicle theft.

*Avis*, 12 Cal. App. 4th at 232-33. Based on *Avis*, it appears clear that as a matter of law, Defendant here would not owe a duty to Plaintiffs if the car rented by the ICE officer had been stolen and had killed Tony in a subsequent accident or hit and run because the rental car would not trigger the application of the special circumstances doctrine. But it was not an ordinary rental car that was stolen and used to injure Tony; it was an allegedly unsecured gun. Thus, as in *Steinle*, the Court concludes the special circumstances doctrine may apply.

7

In each of the special circumstances cases Defendant cites (including *Avis*), a California Court found a reasonable risk of tampering with the vehicle based on evidence in the record; none of the cases was dismissed at the pleadings stage. This is not surprising, because "[o]rdinarily, foreseeability is a question of fact [. . . ; i]t may be decided as a question of law only if, under the undisputed facts there is no room for a reasonable difference of opinion." *Bigbee v. Pac. Tel. & Tel. Co.*, 34 Cal. 3d 49, 56 (1983) (internal quotation marks and citations omitted); *see also Ileto*, 349 F.3d at 1204.

          b.      *Policy Factors*

More analogous is *Ileto*, which analyzes foreseeability and duty in the context of an injury caused by a firearm. The plaintiffs in *Ileto* were shooting victims and their family members. In relevant part, they alleged gun-manufacturer Glock knew its distribution system and marketing policies helped foster an illegal secondary gun market, which promoted illegal gun purchases by people forbidden by law from purchasing guns based on felony convictions or mental health impairments. *Ileto*, 349 F.3d at 1209. The district court found that any harm to the shooting victims was not foreseeable because "there was no way of foreseeing that th[e shooter] would obtain a Glock firearm and use it to injure these Plaintiffs." *Id.* at 1204. On that basis, it dismissed the negligence claim. *Id.*; *id.* at 1196. The Ninth Circuit reversed: "'[A] court's task—in determining duty—is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.'" *Id.* (quoting *Ballard v. Uribe*, 41 Cal. 3d 564, 572 n.6 (1986)). "Thus, it was reasonably foreseeable that if Glock continued to foster the illegal secondary market, a person . . . who was prohibited by law from purchasing a gun would be able to purchase on and use the gun in the manner that was the basis for prohibiting such purchases in the first place." *Id.* at 1208.

The shooter in *Ileto* had been committed to a psychiatric institution and had been convicted of a felony; he thus was prohibited by federal law from purchasing a gun. 349 F.3d at 1195 n.4. Summarizing California law, the Ninth Circuit explained that "a defendant's duty of care extends

8

to those individuals a defendant puts at an unreasonable risk of harm through the reasonably foreseeable actions of a third party." *Id.* at 1204. The *Ileto* Court held "the plaintiffs . . . alleged sufficient facts for a reasonable jury to conclude that through their distribution practices, defendants have created an illegal secondary market targeting prohibited purchasers that placed plaintiffs in a situation in which they were exposed to an unreasonable risk of harm through the reasonably foreseeable conduct of a prohibited purchaser like" the shooter. *Id.* These allegations were "more than sufficient to raise a factual question as to whether the defendants owed the plaintiffs a duty of care and whether the defendants breached that duty." *Id.* The Ninth Circuit did not apply the special circumstances doctrine to find Glock owed a duty; rather, it found a duty based on a direct link between Glock's intentional conduct and the plaintiffs' injuries. *See also* Jan. 11, 2018 FTR at 10:53-54 (Plaintiff arguing *Ileto* not based on special circumstances analysis, but on fact by fact application of the *Rowland* factors).

The Ninth Circuit also balanced the magnitude of the harm likely to result from the conduct against the social value of the interest which the defendant was seeking to advance and the ease with which it could have taken precautions to avoid the risk of harm to the plaintiff. *Ileto*, 349 F.3d at 1205 (citing *Musgrove v. Ambrose Props.*, 87 Cal. App. 3d 44, 150 (1978)). The social value of Glock's interest in distributing guns in the manner alleged in the *Ileto* complaint was outweighed by the health and safety interests of potential victims of gun violence at the hands of prohibited purchasers. *Id.* at 1206. Glock also failed to easily take readily available precautions to avoid having its firearms distributed illegally, but knowingly chose not to do so. *Id.* at 1205. Both these factors weighed in favor of imposing a duty on Glock.

        c.      *Application of Steinle, Avis & Ileto*

During the hearing on its motion, Defendant distinguished *Ileto* by focusing on the direct link between the defendant's own conduct and the harm suffered: the allegations that Glock had intentionally created an illegal secondary gun market that was intentionally directed at providing guns to felons and others who were prohibited from owning weapons. Jan. 11, 2018 FTR at 10:43-10:45. Defendant argued the Complaint does not allege any links between the ICE officer who left his weapon in the car and Tony's killer, between the ICE officer and the thief who stole

the gun, between the ICE officer and Tony; nor does it allege facts showing the ICE officer engaged in any intentional conduct to place the weapon into the hands of people like the shooter. *Id.* at 10:45-47. That is accurate: the Complaint alleges that (1) ICE agent left an unsecured gun in an unlocked bag in an unattended vehicle parked on a street in San Francisco; (2) in an area that is well-known for auto thefts; (3) despite the fact ICE agents have a history of losing firearms due to their failure to properly secure their weapons; and (4) after it was widely-reported in the media that Kathryn Steinle was killed in San Francisco with a government-issued firearm that was stolen from a car parked in San Francisco. *See* Compl. ¶¶ 12-17.

But *Ileto* does not suggest that a duty will arise only when a defendant has directly or intentionally created the risk of harm. As recognized by both *Ileto* and *Steinle*, foreseeability is a central factor in the duty analysis, and is "often is a question" of fact. *Ileto*, 349 F.3d at 1204; *see also Steinle*, 230 F. Supp. 3d at 1033 ("[T]he Court holds that, at the pleading stage, the complaint includes sufficient allegations to support a claim that leaving a loaded gun in a backpack visible on the seat of an unattended vehicle in San Francisco creates foreseeable risk of harm comparable to that posed by a dangerous vehicle, and that the BLM ranger therefore had a duty to better secure his handgun against theft. Whether the ranger in fact had such a duty, and if so, the precise nature of that duty, depends on circumstances better addressed on a more complete factual record at summary judgment or at trial." (internal quotation marks, citations and alterations omitted)). The Court cannot find that Tony was not foreseeably endangered by an agent's failure to secure his service weapon and his decision to leave it in an unattended car in a high-theft area, in light of ICE's known history of losing weapons and in light of Ms. Steinle's well-publicized and tragic killing with a gun that was obtained under similar circumstances.

The Court appreciates that, unlike in Ms. Steinle's case, the weapon that was stolen from the ICE officer was not immediately used to kill Tony close to where it was stolen. Instead, the weapon was allegedly used two weeks later in Oakland, just across the Bay Bridge. Ultimately, the Court cannot find that this distinction establishes a lack of duty as a matter of law at the pleading stage. As discussed above, the *Avis* Court criticized the extension of the special circumstances doctrine in the context of an ordinary car causing an accident in the course of an

10

unrelated police chase – not in the context of an unattended heavy vehicle, much less in the context of a stolen unsecured weapon, both of which are inherently dangerous objects. *See supra* at 6-7. Plaintiffs' Complaint alleges sufficient facts to show it was reasonably foreseeable that (1) a person would break into a rental car parked on the street; (2) steal an unsecured gun and ammunition found therein; and (3) either use it in a criminal act; or (4) resell it or provide it to another criminal, who would then use the gun to commit a criminal act, including shooting someone and killing them. Assuming the truth of these allegations, and despite the lapse of time and change of location, there is room for a reasonable difference of opinion as to whether the killing of an innocent bystander was a foreseeable consequence of leaving a gun unsecured in a vehicle in a high-theft area. *See, e.g.*, *Ileto*, 349 F.3d at 1205 (reasonably foreseeable that "once these prohibited purchasers obtain the firearms, they will use them for criminal activity").

Unlike an ordinary rental car, a gun is a dangerous weapon to which the special circumstances doctrine may apply. The analysis of foreseeability – and ultimately of the existence of a duty – must be based on additional facts, and a fleshing out of relevant policy factors. This is better presented to the Court on a fully developed record than at this preliminary stage in the litigation. The allegations of the Complaint are sufficient to survive a motion to dismiss. *See Steinle*, 230 F. Supp. 3d at 1033.

2. Causation

Defendant argues the Complaint does not allege facts showing the ICE officer's conduct was the proximate cause of Tony's killing. Mot. at 14-16. Defendant argues that proximate cause cannot be established because the initial theft of the gun is an intervening criminal act: a person other than the thief who stole the ICE officers' gun committed another criminal act when he murdered Tony, and the killing occurred two weeks after the theft, in a different city. *Id.*

First, the Complaint does not allege who stole the gun, and does not allege a person other than Holloway stole the gun. *See* Compl. Defendant attempts to interject this unpleaded fact into the Court's analysis by asking the Court to take judicial notice of the fact Sean Gibson was arrested for the theft. Mot. at 4. The Court may take judicial notice of the fact Mr. Gibson was charged with multiple burglary counts in connection with numerous vehicle break-ins (Def.'s

RJN, Ex. C (criminal complaint against Gibson), Dkt. No. 12-1), but this does not establish Mr. Gibson stole the gun that was used to kill Tony. Plaintiffs' Complaint does not allege the make, model, or plate number of the ICE officer's rental car, and the criminal complaint against Gibson does not mention firearm theft. Moreover, Defendant acknowledges Gibson did not plead guilty to the firearm theft, and asks the Court to take judicial notice of the fact the theft charge against Mr. Gibson was dismissed (*Id.*, Ex. D at ECF p.31). Defendant's argument is not properly before the Court on this Motion to Dismiss. At this juncture, the Court accepts as true the Complaint's allegation that the gun that killed Tony was stolen from the ICE officers' vehicle; moreover, the Complaint alleges no facts sufficient for the Court to conclude a person other than Holloway stole the gun.

Second, the Ninth Circuit has previously rejected the argument that an intervening foreseeable crime by a third party breaks causation under California law. *Ileto*, 349 F.3d at 1208-09 ("[U]nder California law, where an intervening act by a third party was foreseeable, it does not amount to a superseding cause relieving the negligent defendant of liability."); *see also Rosecrans v. Dover Images, Ltd.*, 192 Cal. App. 4th 1072, 1087 (2011) (third party crime does not necessarily cut off legal causation if risk of harm was reasonably foreseeable).

Third, like foreseeability, proximate cause ordinarily is a question of fact, not law. *See Raven H. v. Gamette*, 157 Cal. App. 4th 1017, 1029-30 (2007); *Department of State Hosps. v. Superior Court*, 61 Cal. 4th 339, 352-53 (2015) (proximate cause is a question of law "where the facts are such that the only reasonable conclusion is an absence of causation"). Again, taking as true of the allegations in the Complaint, the Court cannot find the only reasonable conclusion here is an absence of causation.

### 3. Negligence Per Se

In their Opposition, Plaintiffs argue the Complaint also state facts sufficient to establish negligence per se. Opp'n at 14-15. Plaintiffs argue the ICE officer violated California law by failing to keep the gun "in the vehicle's trunk or in a locked container in the vehicle" and carrying the gun loaded (as defined by California law). *Id.* at 14 (citing Cal. Penal Code §§ 16840, 16850, 25610(a)(1), 25850(a))). Plaintiffs argue failure to exercise due care is presumed if (1) the

12

defendant violated a statute, such as the Penal Code statute requiring guns be kept in a trunk or locked; (2) the violation proximately caused the death; (3) the death resulted from the conduct the statute was meant to prevent; and (4) the person who was killed was of the class the statute mean to protect. *Id.* (citing Cal. Evid. Code § 669). The Complaint does not plead this theory. *See* Compl. In light of the Court's conclusion that Plaintiffs state a negligence claim, the Court need not address this argument.

**B.     Jury Trial**

The United States also asks the Court to strike Plaintiffs' demand for a jury trial, on the ground the FTCA does not provide such a right. *Id.* at 16-17. "There is no right to a jury trial under the [FTCA]." *United States v. Neustadt*, 366 U.S. 696, 701 n.10 (1961) (citing 28 U.S.C. § 2402); *see also In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 992 n.4 (9th Cir. 1987) ("The FTCA specifically provides that in tort actions against the United States, trials shall be to the court without a jury"). Plaintiffs confirmed during oral argument that they did not oppose Defendant's motion to strike their request for jury trial. *See* Jan. 11, 2018 FTR at 10:24-25. The Motion is granted as to this issue.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss and GRANTS the motion to strike the jury demand. Defendant shall answer the Complaint by February 23, 2018.

An initial case management conference is scheduled for March 8, 2018 at 10:00 a.m. This conference shall be attended by lead trial counsel. No later than seven calendar days before the Case Management Conference, the parties shall file a Joint Case Management Statement containing the information in the Standing Order for All Judges in the Northern District of California, available at: http://cand.uscourts.gov/mejorders. The Joint Case Management

Statement form may be obtained at: http://cand.uscourts.gov/civilforms.  If the statement is e-filed, no chambers copy is required.

**IT IS SO ORDERED.**

Dated: February 9, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge